IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SONGSRI DAVIS and JAMES DAVIS, | § § | Case No. 05-43527 (Chapter 7) |
| | § | |
| Debtors. | § | |
| | § | |
| ANTHONY WALLACE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 05-4204 |
| | § | |
| JAMES P. DAVIS, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court following the trial of the "Complaint Objecting to Discharge Pursuant to §523 of the Bankruptcy Code and for an Award of Damages" (the "Complaint") filed by Anthony Wallace ("Wallace" or the "Plaintiff") against James P. Davis ("Davis" or the "Defendant"). Although Mr. Davis answered the Complaint and received a continuance of the trial date, he failed to appear for trial to defend against the Plaintiff's claims. The Court, having considered the pleadings and evidence presented at trial as well as the arguments of Plaintiff's counsel, makes the following findings of fact and conclusions of law regarding the Plaintiff's claims against Mr. Davis:

### I. FINDINGS OF FACT

1.      Prior to bankruptcy, Mr. Davis owned a home located at 1220 Wheatfield Drive in Mesquite, Texas (the "Property"). Union Planters Bank ("Union Bank") owned

1

and held a Deed of Trust and Note encumbering the Property.

2.     On or about November 3, 1992, Mr. Wallace purchased the Property as his homestead.  Mr. Wallace and Mr. Davis executed a Warranty Deed, Real Estate Lien Note in the principal amount of $71,000, and a Deed of Trust in connection with the sale.

3.     Mr. Davis had previously assumed an FHA loan with Union Bank in connection with the Property.  When Mr. Davis sold the property to Mr. Wallace, Mr. Davis financed the purchase with a "wrap-around" mortgage whereby Mr. Wallace was to make payments to Mr. Davis, and then Mr. Davis, in turn, was to make payments to Union Bank.  However, in or around February 2002, Mr. Davis ceased making his monthly payments to Union Bank, whereupon Mr. Wallace paid Mr. Davis an additional $5,000 to avoid losing the Property.

4.     Mr. Wallace subsequently decided to sell the Property.  He listed the property through Mr. Davis, who was a realtor with ReMax.  After Mr. Davis transferred from ReMax to Texas Homes Realty, he persuaded Mr. Wallace to transfer the listing to Texas Homes Realty.

5.     Mr. Davis made numerous demands and representations to Mr. Wallace concerning the amounts owed by Mr. Wallace which were false, fraudulent and inaccurate and which were made recklessly and with total disregard for the truth or validity thereof.  Mr. Davis repeatedly misrepresented and misstated the amounts owed on Mr. Wallace's mortgage account.  During the period that the Property was listed with Texas Homes Realty, Mr. Davis attempted to foreclose on the Property.

6.     Mr. Davis initiated the bankruptcy case associated with this adversary proceeding by filing a petition for relief under Chapter 7 of the Bankruptcy Code on July

4, 2005. Mr. Davis failed to make any payments to Union Bank after filing for bankruptcy.

7.  On May 1, 2006, Mr. Davis allowed Union Bank to foreclose on the Property. The Property was worth $98,000 at the time of the foreclosure, and Mr. Wallace owed Mr. Davis $74,714.53 pursuant to the Real Estate Lien Note.

8.  Prior to foreclosure, Mr. Wallace spent $6,360.32 making numerous repairs and upgrades to the Property. These costs were reasonable and necessary.

9.  Mr. Wallace retained counsel in connection with this bankruptcy case. Mr. Wallace has spent $11,000 in attorneys' fees. These attorneys' fees were reasonable and necessary.

10.  In his Complaint, Mr. Wallace claims that Mr. Davis violated the Texas Deceptive Trade Practices Act and the Texas Debt Collection Practices Act. Mr. Wallace also brings claims against Mr. Davis for the common law tort of unreasonable collection efforts as well as breach of fiduciary duty. Mr. Wallace seeks to liquidate his claims against Mr. Davis and to have this Court declare the obligations of Mr. Davis to Mr. Wallace to be non-dischargeable in bankruptcy under 11 U.S.C. §523(a)(2), (4) and (6).

## II. CONCLUSIONS OF LAW

11.  A proceeding seeking a determination of the dischargeability of a debt raises a core matter over which this Court has jurisdiction to enter a final order. 28 U.S.C. §157(b)(2)(I) and (O) and 28 U.S.C. §1334. To the extent the Plaintiff seeks to have his claims liquidated and allowed, this is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Moreover, bankruptcy courts routinely determine a debtor's liability on a claim as a necessary prelude to determination of dischargeability under §523(a) of the

Bankruptcy Code.  *See, e.g., In re Florida,* 164 B.R. 636 (9th Cir. BAP, 1994); *Shaw v. Santos (In re Santos),* 304 B.R. 639, 647 (Bankr. D. N.J. 2004).

13. In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard.  *Grogan v. Garner*, 498 U.S. 279, 286 (1991).  "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."  *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997).  Thus, without satisfactory proof of each element of the cause of action, judgment must be entered for the debtor.

### A. Plaintiff's State Law Claims

*1. Plaintiff's Texas DTPA Claim*
<u>*Relating to the Attempted Foreclosure by Mr. Davis*</u>

13. At all relevant times, Mr. Wallace was a "consumer" within the meaning of the Texas Deceptive Trade Practices Act ("<u>DTPA</u>"), TEX. BUS. COM. CODE §§17.41 *et seq*., and the transactions entered into were consumer transactions.  In particular, Mr. Davis entered into a contract with Mr. Wallace in a consumer transaction for the purpose of furnishing real estate services relating to the sale of the Property.  Mr. Davis subsequently created a conflict of interest by attempting to foreclose on the Property.

14. Mr. Davis engaged in false, misleading and deceptive practices, including the practices described in TEX. BUS. COM. CODE §§ 17.45(5), 17.46(b)(7), 17.46(b)(12) and 17.46(b)(23).  Mr. Davis' actions were unconscionable and, consequently, Mr. Wallace may maintain an action for economic damages and mental anguish.  *See* TEX. BUS. COM. CODE §§ 17.50(a)(3).  Mr. Davis' conduct was committed knowingly and,

consequently, Mr. Wallace may recover exemplary damages of treble the amount of actual damages. *See* TEX. BUS. COM. CODE §§ 17.50(b)(1). Mr. Wallace also is entitled to all reasonable and necessary attorneys' fees plus costs and prejudgment interest on actual damages. *See* TEX. BUS. COM. CODE §17.50(d); TEX. FIN. CODE §304.101; *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 137 (Tex. 1988).

15.   With respect to prejudgment interest, the general purpose of such an award is to compensate the prevailing plaintiff for lost use of money during the lapse of time between the accrual of the claim and the date of judgment. *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 552 (Tex. 1985). A prevailing party, however, is not entitled to recover prejudgment interest on damages until those damages have actually been sustained. *Calhoun v. Chase Manhattan Bank (U.S.A.), N.A.,* 911 S.W.2d 403, 411 (Tex.App.-San Antonio 1995, no writ). Here, since Mr. Wallace's actual damages are premised on the loss of the Property through the foreclosure by Union Bank on May 1, 2006, prejudgment interest should accrue from that date through the entry of a judgment in this adversary proceeding. The prejudgment interest rate on May 1, 2006 was 7.75% under Texas law. *See* TEX. FIN. CODE §§ 304.003 and 304.103. *See also, e.g., Bartholomew v. CNG Producing Co.,* 832 F.2d 326, 330-331 (5th Cir. 1987) (state law governs the award of prejudgment interest where state law provides for prejudgment interest as a substantive right); *Global Petrotech, Inc. v. Engelhard Corp.,* 58 F.3d 198 (5th Cir. 1995) (awarding pre-judgment interest at the rate set by Texas law in a diversity action seeking damages for violations of the Texas DTPA).

*2. Plaintiff's Texas DCPA Claim*
*Relating to Mr. Davis' Debt Collection Practices*

16.   Mr. Wallace is a "consumer" within the meaning of the Texas Debt

Collection Practices Act ("DCPA"), TEX. FIN. CODE §§ 392.001 *et seq*. The debt in question is a "consumer debt" within the meaning of the DCPA.

17. The acts and omissions of Mr. Davis in misrepresenting the amount of the debt owed by Mr. Davis violated the DCPA. *See* TEX. FIN. CODE §392.304(a)(8). Mr. Wallace may recover all actual damages sustained as a result of the violations of the DCPA, including but not limited to attorneys fees and mental anguish. *See* TEX. FIN. CODE §392.403. Additionally, Mr. Davis' violation of the DCPA is also a violation of the DTPA. *See* TEX. FIN. CODE §392.404.

*3. Plaintiff's Claim for Unreasonable Collection Efforts
Relating to Mr. Davis' Debt Collection Practices*

18. The tort of "unreasonable collection efforts" recognizes the right of consumers to be free from unreasonable and wrongful collection efforts by creditors. The standard of conduct for unreasonable collection efforts is ruled by the negligence doctrine. *Moore v. Savage* (Tex. Civ. App. Waco, 1962) 359 S.W.2d 95 [writ refused n.r.e.] *per curiam* 362 S.W.2d 298 (Tex. 1962). The tort has been defined as: "[collection] efforts such as a person of ordinary care and prudence would not have used under the same or similar circumstances." In order to recover exemplary damages for a creditor's unreasonable collection efforts, the debtor must prove malice or reckless disregard for the rights of others. *Ware v. Paxton*, 359 S.W.2d 897, 898–899 (Tex. 1962).

19. Here, Mr. Davis repeatedly refused to recognize payments that Mr. Wallace had made on his account. He continued to charge Mr. Wallace as if such payments had not been made and continued to insist upon payment for such amounts. Mr. Davis purported to initiate foreclose proceedings on the Property based on Mr.

6

Wallace's alleged nonpayment, and he imposed numerous foreclosure-related charges upon Mr. Wallace's mortgage loan account. Mr. Davis slandered Mr. Wallace's credit reputation, defamed his credit, and exposed him to ridicule in the community.

### *4. Plaintiff's Claim for Breach of Fiduciary Duty*

20.     Mr. Wallace relied upon and trusted Mr. Davis, which established a confidential or fiduciary relationship under Texas law. *See Thanksgiving Tower Partners v. Anros Thanksgiving Partners*, 64 F.3d 227 (5th Cir. 1995).

21.     After he became the listing agent for the sale of the Property, Mr. Davis breached his fiduciary duty to Mr. Wallace by attempting to foreclose on the Property in an effort to regain possession of the Property.

22.     Mr. Wallace made payments to Mr. Davis in good faith and in reliance upon the representation by Mr. Davis that he would make payments to Union Bank. After he ceased to make payments to Union Bank, Mr. Davis continued to accept payments from Mr. Wallace under false pretenses, and he thereby defrauded Mr. Wallace.

## B. Dischargeablity of the Plaintiff's Claims

### *1. 11 U.S.C. §523(a)(2)(A)*

23.     A fresh start is not promised to all who file for bankruptcy relief, only to "the honest but unfortunate debtor." *Grogan,* 498 U.S. at 286-87. In furtherance of this policy, §523(a)(2)(A) of the Bankruptcy Code provides that:

> [A] discharge under §727 . . . of this title does not discharge an individual debtor from any debt for money, property, or services, . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A).

24. The Fifth Circuit has distinguished the elements of "false pretenses and false representations" on the one hand, and "actual fraud" on the other. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995).

25. To prove that a debt is non-dischargeable as having been obtained by false pretense or representation, a creditor must establish (i) the existence of a knowing and fraudulent falsehood, (ii) describing past or current facts, and (iii) that was relied upon by the creditor. *See Allison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992); *RecoverEdge L.P.*, 44 F.3d at 1292-93. "'False pretenses' and 'false representations' both involve intentional conduct intended to create and foster a false impression." *Still v. Patten (In re Patten)*, 225 B.R. 211, 215 (Bankr. D. Ore. 1998) (citation omitted). "The distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement." *Id*. (citations omitted).

26. Actual fraud requires the additional proof of the debtor's intent to deceive and a loss by the creditor which is proximately caused by the fraud. *RecoverEdge L.P.*, 44 F.3d at 1293.

27. Here, Mr. Davis made representations to Mr. Wallace regarding his representation of Mr. Wallace as the listing agent for the sale of the Property. At the time the representations were made, Mr. Davis knew the representations were false. Mr. Davis made the representations with the intention to deceive Mr. Wallace. Mr. Wallace justifiably relied on such representations and he sustained losses as a proximate result of the representations. *See Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.,* 993 F.2d 1178, 1186 (5th Cir. 1993).

8

### *2. 11 U.S.C. §523(a)(6)*

28. Section 523(a)(6) of the Bankruptcy Code "excepts from discharge any debt incurred for willful and malicious injury by the debtor to another entity." 11 U.S.C. §523(a)(6). A "willful" injury requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaahau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). To establish an intentional injury, the creditor must establish "either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller v. J.D. Abrams Inc. ( In re Miller )*, 156 F.3d 598, 606 (5th Cir.1998). A "malicious" act is as an act done with the actual intent to cause injury. *In re Miller,* 156 F.3d at 606.

29    Here, with respect to the "wraparound mortgage," there was an objective, substantial certainty that Mr. Davis' failure to pay Union Bank would harm Mr. Wallace. *In re Keaty*, 397 F.3d 264, 271 (5th Cir. 2005). Mr. Davis deliberately and intentionally injured Mr. Wallace by accepting payments from Mr. Wallace but then failing to make the required payments to Union Bank. The failure to pay Union Bank led to the foreclosure of the Property and the loss of Mr. Wallace's equity in the Property.

### *3. 11 U.S.C. §523(a)(4)*

30. A claim involving a debtor's fraud or defalcation while acting in a fiduciary capacity is excepted from discharge by §523(a)(4). The concept of "fiduciary duty" under section 523(a)(4) is determined by federal common law. *Matter of Miller*, 156 F.3d 598, 602 (5th Cir. 1998). "[T]he concept of fiduciary under §523(a)(4) is narrower than it is under the general common law. Under §523(a)(4), 'fiduciary' is limited to instances involving express or technical trusts." *Texas Lottery Comm'n v.*

*Tran*, 151 F.3d 339, 342 (5th Cir. 1998).

31.     In this case, the mere fact that state law places Mr. Davis and Mr. Wallace in relationship that may have some of the characteristics of a fiduciary relationship does not mean that the relationship is a fiduciary relationship under §523(a)(4), which requires the existence of express or technical trust. As one court has observed:

> [C]ase authority recognizes that the traditional definition of "fiduciary" is not applicable in defining "fiduciary capacity" under section 523(a)(4). The general meaning of a fiduciary--a relationship involving confidence, trust and good faith--is far too broad for the purposes of section 523(a)(4) ... . The Supreme Court favors a narrow construction of the term "fiduciary capacity" and defines the term as meaning arising from an express or technical trust.

*In re Twitchell*, 91 B.R. 961, 964-65 (D. Utah. 1988) (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (1934)).[1]  Here, Mr. Wallace has not established by a preponderance of the evidence that his claims against Mr. Davis are nondischargeable under §523(a)(4) of the Bankruptcy Code.  *See Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1341 (5th Cir. 1980) (in determining whether a trust exists under §523(a)(4), state law must impose trust-like obligations, and the trust must arise prior to and without reference to the act creating the debt).

### III. CONCLUSION

32.     Mr. Wallace is entitled to actual damages in the amount of $29,645.79 for the loss of his equity in the Property plus exemplary damages of treble the amount of actual damages.  Mr. Wallace also is entitled to damages for mental anguish in the amount of $5,000 and to recover his reasonable attorneys' fees in the amount of $11,000.

---

[1] On the other hand, the Fifth Circuit has "not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable. Thus, debts of corporate officers to the corporation or a minority shareholder have been held non-dischargeable, as have the debts of a managing partner of a limited partnership to the limited partners." *In re Gupta,* 394 F.3d 347 (5th Cir. 2004) (citations omitted).

These amounts are non-dischargeable in bankruptcy pursuant to §523(a)(2) and (a)(6) of the Bankruptcy Code. The Court will enter a judgment consistent with these findings of fact and conclusions of law.

26. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court expressly reserves the right to make additional findings as necessary or as requested by any party.

Signed on 9/12/2007

*Brenda T. Rhoades*   SR

HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE